**PROTESTANT EPISCOPAL CHURCH COUNCIL OF the DIOCESE OF TEXAS, Appellant,**

**v.**

**David H. McKINNEY et al., Appellees.**

**No. 3547.**

Court of Civil Appeals of Texas.

Eastland.

Sept. 9, 1960.

Rehearing Denied Oct. 21, 1960.

Fountain, Cox, Gaines & Fox, S. S. McClendon, Jr., Houston, for appellant.

Young, Young & Daggett, Houston, for appellees.

COLLINGS, Justice.

David H. McKinney and others, as a class representing approximately 200 homeowners in the University Oaks Addition to the City of Houston, obtained an injunction against the Protestant Episcopal Church Council of the Diocese of Texas permanently enjoining the defendant from using lots 1, 2 and 3, Block 1, of University Oaks Addition for other than residential purposes only, and particularly from using said property as a student center, or for student recreation, coffee clubs, chapel services, receptions and meetings, or gatherings of students, or for any other purpose of a like nature, and from using said premises for any purpose whatever except for residential purposes. The defendant has appealed.

The restriction in question provides as follows:

"(a) No business house, sanitarium, hospital, saloon, place of public amusement or entertainment, livery stable, factory, warehouse, duplex, apartment house, rooming house, boarding house, or place of business of any kind (either similar or dissimilar to the sorts hereinabove enumerated) shall be constructed, built, kept or maintained, on any lot or lots in said addition, nor shall any building, or any lot or lots in said addition be used for any such purpose, but shall be used for residence purposes only; provided that the prohibition herein contained of the operation of a rooming house or boarding house shall not prohibit the renting of one room, but is intended only to prevent the running of a regular rooming or boarding house; and provided further that duplex apartments, designed to accommodate not more than two families may be constructed upon, but only upon, Lots No. 20 to 27, Block No. 9, of said addition."

The court filed findings of fact, a portion of which findings were as follows and constitute the principal material facts in the case:

"Defendant purchased Lots 1, 2 and 3 in Block 1 in the Subdivision in question October 11, 1952. These lots front North on Wheeler Street in the City of Houston. Immediately across Wheeler Street is the University of Houston campus.

"In the year 1939 the University of Houston was small, Wheeler Street not heavily traveled. The University is now very large. Since 1939 there has been constructed, across Wheeler from the Subdivision, three large dormitories, two parking lots, a tennis court and a baseball field. Just West of the Subdivision is another University parking lot. Many students frequent the neighborhood. Traffic is now heavy on Wheeler Street. The streets of the Subdivision are for some distance off Wheeler extensively used by students and others for parking.

"Prior to purchasing the lots in question, search was made by defendant for suitable places for its operations in issue, but none outside the restricted area in question was, or has since been, found which, in the judgment of the Church's Bishop and other officers, provides a suitable location that is near to the University, for the effective prosecution of its objectives.

"The purpose of maintaining the house in question is to give the Episcopalian students attending the University from out of town a homelike and Christian atmosphere into which they may come, such as is hoped is offered in their own homes, in which their religious contacts may be continued.

"The usages of the house permitted or fostered and proposed to be continued by defendant are:

First, residence therein by either a Priest or Postulant for Holy Orders.

Second, on Thursday morning, services of Holy Communion, with duration of some thirty minutes. A Priest is the celebrant; attendance is small.

Third, on Tuesday evenings, Episcopalian students and friends are invited and permitted to assemble for a period of discussion. Coffee and cold drinks are served. A Priest is present. Attendance is small.

Fourth, on Sunday evenings, the Canterbury Club meets for religious instruction and discussion. A Priest is present. Refreshments are served. The Canterbury Club consists of a very few members. Attendance at the meetings is small.

Fifth, the House is open from 9:00 A.M. to 3:00 P.M. each school day. Students are permitted to visit, play games, listen to music, study or hold discussions. Some responsible adult is always present. Again, attendance is small.

"Issuance of the injunction herein will seriously impair the effectiveness of the efforts of the defendant to achieve its aims.

"The activities carried on in the house in question are not offensive to others.

"The defendant's operations on the premises in question have not lessened, and their continuance will not lessen, the value, desirability or usefulness of other properties in the Subdivision as residences."

The court also made and filed the following conclusions of law:

"1. The above restrictive covenant requiring that any lot or lots in the Addition known as University Oaks, in the City of Houston, Harris County, Texas, shall be used for residence purposes only is a valid and binding and enforceable restriction.

"2. The Protestant Episcopal Church Council of the Diocese of Texas, in its ownership of lots 1, 2 and 3, in Block 1, of University Oaks Addition to the City of Houston, Harris County, Texas, is bound by the restrictive covenant likewise with all property owners owning property in said addition, Plaintiffs in this cause of action.

"3. The nature and extent of the use of said premises by the Defendant Corporation for purposes other than as a residence use only is determinative of whether an injunction decree should be entered and the evidence in this cause is clear that the Defendant Corporation through its use of said real property is violating and has violated the restrictive covenant by a use of said property in a manner other than residence use only.

"4. The Defendant, Protestant Episcopal Church Council of the Diocese of Texas, its officers, agents, servants employees and members, stand equally before the law with all of the many property owners, Plaintiffs herein, residents of University Oaks Subdivision, who here ask to enforce the restrictive covenant prohibiting the use of said property for any purpose other than residence use, and the Defendant Corporation, its agents, servants, employees and members should be enjoined.

"5. Changed conditions outside of the restricted area of University Oaks Subdivision is not a defense available to prevent the enforcement of valid restrictions covering property lying wholly within University Oaks Subdivision.

"6. A covenant restricting the use of land may be enforced by injunction without regard to the damage caused by the breach."

The language of the restrictive covenant is not ambiguous. It prohibits the use of the property for any purpose except "for residence purposes only". There has been no abandonment of the restriction. The findings of fact and the evidence show the usage of the property by appellant to be "first, residence therein by either a Priest or Postulant for Holy Orders". This use is not in violation of the restriction but it is not the "only" use that appellant makes of its property. Additional uses, as above set out, are such that it is apparent that appellant's use of its property is not limited to "residence purposes only". Such additional uses are at least technical violations of the restrictive covenant. These additional uses are not incidental to the use of the property as a residence but are the principal uses for which appellant maintains the property. The question presented is whether under all the circumstances this is such a breach that appellees are entitled to injunctive relief.

Appellant contends that the court erred in concluding that "a covenant restricting the use of land may be enforced by injunction without regard to the damages caused by the breach", and that the court erred in the instant case in refusing to apply the rules of equity and in granting an injunction against appellant when the evidence showed (1) that the neighborhood along Wheeler Street, on which appellant's property fronts, has been completely changed in character by the tremendous growth of the adjacent university and the surrounding city; (2) that the present and planned usage of the property by appellant is inoffensive and does not injure anyone in the use of his property or its value; (3) that, as a matter of law, continuance of such usage will not prejudice appellees or their rights to resist other alleged violations and (4) that appellant's important work will be seriously and irretrievably impaired, without any profit to appellees, by the injunction. We cannot agree with appellant's contention.

■ The general rule is that to entitle a petitioner to injunctive relief there must be established an actual and substantial injury or an affirmative prospect thereof. 43 C.J.S. Injunctions § 22, p. 439; Smiley v. City of Graham, Tex.Civ.App., 37 S.W.2d 289; Sanitary Appliance Co. v. French, Tex.Civ. App., 34 S.W.2d 673; Gambrell v. Chalk Hill Theatre Co., Tex.Civ.App., 205 S.W. 2d 126, (Ref. N.R.E.); Hinton v. D'Yarmett, Tex.Civ.App., 212 S.W. 518.

However, an exception to the above stated general rule is found in cases holding that a covenant restricting the use of land may be enforced by injunction where a distinct or substantial breach is shown, without regard to the amount of damages caused by the breach, and that in such cases it is not necessary to show the existence of any particular amount of damages or to show that the injury will be irreparable. See 43 C.J.S. Injunctions § 87, p. 585; Evangelical Lutheran Church of Ascension of Snyder v. Sahlem, 254 N.Y. 161,

172 N.E. 455; Johnson v. Mt. Baker Park Presbyterian Church, 113 Wash. 458, 194 P. 536.

■ Although the existence or extent of damages in such cases is not controlling, it is material, and must be shown in order to come within the exception, that there is a distinct and substantial breach of the restrictive covenant. In our opinion the evidence supports the conclusion that the breach of the restrictive covenant in the instant case is a distinct and substantial one. It therefore comes within the exception to the general rule.

In considering the question of the uses of property which are in violation of covenants providing that property "is to be used for residence purposes only" and for which injunctive relief will lie, the Supreme Court of Florida in Moore v. Stevens, 90 Fla. 879, 106 So. 901, 904, 43 A.L.R. 1127, states as follows:

"Instances are not lacking in which other courts have held or intimated that property restricted to use for residence purposes, so long as it is in good faith used for such, may be also used to a minor extent for the transaction of some classes of business or the following of some professional pursuits so long as the latter use is in effect casual, infrequent, or unobtrusive and results in neither appreciable damage to neighboring property nor inconvenience, annoyance, or discomfort to neighboring residents. *This view, however, further requires such additional use to be so reasonably incidental to the prescribed use and such a nominal or inconsequential breach of the covenants as to be in substantial harmony with the purpose of the parties in the making of the covenants * * *."* (Emphasis ours.)

Our own Supreme Court in Southampton Civic Club v. Couch, 322 S.W.2d 516, 520, in a case involving a somewhat similar restriction, stated that injunctive relief was proper where it was shown that a defendant

was using his dwelling house "primarily as a source for financial gain rather than as a residence for himself and his family and domestic servants". As already noted, the primary or principal use of the property in the instant case is something other than for residential purposes. The additional uses are not incidental to the use of the property as a residence, but are the principal and primary uses for which the property is maintained. The evidence also indicates that an increase in such additional uses is contemplated in the future. The present and contemplated future uses of the property in question constitute a distinct and substantial breach of the restrictive covenant.

■ As contended by appellant, the evidence shows and the court found some change of conditions in the surrounding area. The University of Houston which is directly across Wheeler Street from appellant's property has developed into a large institution. Wheeler Street has become a heavily traveled thoroughfare, and obviously, together with other property in the addition facing on that street is most affected by the changed conditions. This consideration, however, is not controlling. Wald v. West MacGregor Protective Ass'n, Tex.Civ.App., 332 S.W.2d 338 (Ref. N.R. E.). It is held that: "Equity in such a situation lies with the property owners who desire that their home district be confined to its original purpose." Scaling v. Sutton, Tex.Civ.App., 167 S.W.2d 275 (Ref. W.M.). As stated by our Supreme Court in Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943, 946:

"If the benefits of the original plan for a restricted subdivision can still be realized for the protection of the interior lots, the restriction should be enforced against the border lots notwithstanding that such lot owners are deprived of the most valuable use of their lots."

There has been no abandonment or waiver of the restriction within the addition, nor

has there been such a change of conditions in the character of the neighborhood as to defeat the purpose of the restriction. The evidence does not establish that the restriction does not remain a substantial benefit to the dominant estate. It is held that under such circumstances the violation of a restrictive covenant will be enjoined. 43 C.J.S. Injunctions § 87, pp. 588, 589; Bethea v. Lockhart, Tex.Civ.App., 127 S.W.2d 1029 (Writ Ref.); Benbow v. Boney, Tex.Civ.App., 240 S.W.2d 438 (Writ Ref.).

The use of the property by appellant in the instant case constitutes a distinct and substantial breach of the restrictive covenant and the trial court did not err in granting injunctive relief.

The judgment of the trial court is in all things affirmed.