William STEPHENSON et al., Appellants,

v.

Werner J. PERLITZ et ux., Appellees.

No. 7706.

Court of Civil Appeals of Texas, Beaumont.

April 22, 1976.

Rehearing Denied May 13, 1976.

Scott R. Kidd, Austin, for appellants.

Thomas Watkins, Austin, for appellees.

KEITH, Justice.

Pursuant to directions of our Supreme Court, we again review this appeal involving a suit for the enforcement of restrictive covenants in a deed. The underlying facts have been stated in the prior opinions: (1) of this Court reported in Tex.Civ.App., 524 S.W.2d 786; and (2) of the Supreme Court reported in Tex.Civ.App., 532 S.W.2d 954. We refer to these opinions for the facts giving rise to the litigation.

It is now clearly the law in Texas that a duplex dwelling cannot be erected upon a lot which has a restriction providing that the premises shall be used for residence purposes and only one residence erected thereon. 532 S.W.2d at 955.

But, under the language found in *Cowling v. Colligan,* 158 Tex. 458, 312 S.W.2d 943, 945 (1958), a court of equity may refuse to enforce a residential-only restriction under at least two circumstances:

"[B]ecause of the acquiescence of the lot owners in such substantial violations within the restricted area as to amount to an abandonment of the covenant or a waiver of the right to enforce it."

"[B]ecause there has been such a change of conditions in the restricted area or surrounding it that it is no longer possible to secure in a substantial degree the ben-

efits sought to be realized through the covenant."

The trial court filed findings of fact and conclusions of law which supported the denial of the equitable relief upon each of the grounds set out in *Cowling,* supra.[1] In addition to the specific findings quoted in the margin, the trial court found that there will be no economic or aesthetic damage to plaintiffs by the construction of the duplex. It concluded that enforcement of the restriction would be inequitable and that the violation of the restriction does not "materially affect the Plaintiffs."

■ Plaintiffs attack the findings and conclusions of the trial court by appropriate no evidence and insufficient evidence points. Findings of fact are not conclusive on appeal when, as in this case, a statement of facts appears in the record. *Swanson v. Swanson,* 148 Tex. 600, 228 S.W.2d 156, 158 (1950); *Rosetta v. Rosetta,* 525 S.W.2d 255, 260 (Tex.Civ.App.—Tyler 1975, no writ). And, findings of fact are binding on the appellate court only if supported by evidence of probative force.

■ In *Stewart v. Welsh,* 142 Tex. 314, 178 S.W.2d 506, 508 (1944), the Court recognized the rule that an owner may waive his right to insist upon compliance with the restriction; but, the Court continued:

> "[H]e is not precluded from enforcing a restriction against an owner whose violation of it materially affects him, by failing to complain of another's violation which does not materially affect him in the enjoyment of his property or which is merely trivial."[2]

This rule is well recognized and has been applied in other cases, see, e. g., *Ortiz v. Jeter,* 479 S.W.2d 752 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.); *Davis v. Hinton,* 374 S.W.2d 723 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.); *Barham v. Reames,* 366 S.W.2d 257 (Tex.Civ.App.—Fort Worth 1963, no writ); *Zent v. Murrow,* 476 S.W.2d 875 (Tex.Civ.App.—Austin 1972, no writ).

■ Moreover, the burden was on the defendants to prove that the prior violations "were substantial in nature and materially affected the use of plaintiff's land for residential purposes." *Ortiz v. Jeter,* supra (479 S.W.2d at 757).

■ We have reviewed the evidence carefully and the following resume serves to put the contentions into proper perspective: At most, there were no more than nine violations of the one-residence restriction in the entire subdivision consisting of more than one hundred lots. With one exception, all of these buildings were *originally* designed, constructed, and used as single-family residences in compliance with the restriction. Many of the existing violations consisted of servants' quarters which had been converted into separate living units or cabanas, etc.

Plaintiffs denied that they knew of several of the violations which were shown to have existed in parts of the subdivision. Those violations could not have affected the appellants in the enjoyment of their property. One of the violations, that upon Lot 7, Block 2, was known to appellants to contain two living units. However, this was far removed from appellant's properties, being

1. Findings of Fact Nos. 6 and 7: "There are currently nine lots being used in violation of the subject deed restriction." "Plaintiffs have filed no other lawsuits to enforce the deed restrictions." Conclusion of Law No. 3: "The acquiescence of the Plaintiffs to multiple-family usages within the restricted area constitutes a waiver of the right to enforce the subject deed restriction."

Finding of Fact No. 8: "In addition to the multiple-family usages in the subject subdivision, there are considerable multiple-family usages in the two contiguous subdivisions so that

the construction of Defendants' duplex will not change the nature of the neighborhood." Conclusion of Law No. 4: "The change of conditions within the subject neighborhood make it no longer possible to secure benefits to the Plaintiffs by the enforcement of the deed restrictions."

2. *Green v. Gerner,* 283 S.W. 615 (Tex.Civ.App.—Galveston 1926), affirmed, 289 S.W. 999 (Tex.Com'n App.1927), was one of the cases cited in *Stewart. Green v. Gerner* was the leading authority relied upon by the Supreme Court in reversing our prior decision.

situated on another block and another street.[3]

Two of the violations were closer to plaintiffs' properties: Lot 8, Block 2, and Lot 3, Block 6. The first of these was the Holland Page home designed as a single-family residence with a unit above the garage in which the Page's son lived. This latter unit was later to be used as a residential unit although the entire property maintained the appearance as a single-family residence. Under the authorities cited earlier, we are of the opinion that there was no evidence of probative value which established or supported the finding that there had been a waiver by the plaintiffs.

In *Massachusetts Bond. & Ins. Co. v. Orkin Exterm. Co.*, 416 S.W.2d 396, 401 (Tex. 1967), we find this language:

"Waiver has been frequently defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it."

And, it is to be noted: "Waiver presupposes full knowledge of existing right." *Wirtz v. Sovereign Camp, W. O. W.*, 114 Tex. 471, 268 S.W. 438, 441 (1925).

Tested by the authorities herein considered, we sustain plaintiffs' point of error 2a: "[T]here is no evidence that appellants acquiesced in substantial violations of the one-residence restriction."[4]

Plaintiffs' third point of error challenges the trial court's finding and conclusion that "change of conditions within the subject neighborhood make it no longer possible to secure benefits to the Plaintiffs by the enforcement of the deed restrictions." As shown earlier, this is the second of the grounds for denial of the enforcement artic-

ulated in *Cowling v. Colligan,* supra (312 S.W.2d at 945).

■ Again, we have reviewed the testimony and sustain plaintiffs' point 3a: There is no evidence to support a finding of such a change of conditions within the subject neighborhood that it is no longer possible to secure benefits to plaintiffs by enforcement of the deed restriction.[5]

Defendants' expert witness, Thomas Gardner, testified that there were more than a thousand lots in the area of the subject property; that he observed sixty-six lots that were or might have been put to multi-family uses; of these, twenty-four were not duplexes but were homes containing gate houses or servants' quarters. Thus, less than seven percent of the lots in the area had non-conforming multi-family dwellings on the lots. On the other hand, the record discloses that there were many fine homes in the addition which were kept and maintained as single-family dwellings. Indeed, a reading of the record leads to the conclusion that Edgemont has remained virtually unchanged from its single-family status for many years.

Plaintiffs were and are entitled to the protection of the restrictions contained in the deeds to the lots in the subdivision. It follows, therefore, that the trial court erred in denying plaintiffs the injunction they sought.

The judgment of the trial court is reversed and the cause is remanded to that court with instructions to grant plaintiffs an appropriate permanent injunction enjoining and restraining the defendants from erecting any improvements upon their lot other than a single-family dwelling. All costs are adjudged against the defendants.

---

**3.** In *Green v. Gerner,* supra (283 S.W. at 618), the court quoted from *De Galan v. Barak,* 223 Mich. 378, 193 N.W. 812, 814 (1923): "Violations in other blocks and on other streets did not require plaintiffs to run to court to prevent them, or, for failure to do so, remain supine when other and nearer violations of the restrictions threatened them with direct financial injury."

**4.** We follow the rule set out in *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965), in evaluating the evidence in this record. If we were to reach the question, we would also sustain plaintiffs' point 2b complaining that the evidence is factually insufficient to show plaintiffs acquiesced in substantial violations of the restriction.

**5.** The statement made in footnote 4, supra, is also applicable to plaintiffs' alternate point 3b.

*Cowling v. Colligan,* supra (312 S.W.2d at 948).

REVERSED and REMANDED with instructions.